# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA BENNETT, : | |
| : | Case No. 2:16-cv-353 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| APG MEDIA OF OHIO, LLC, *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION AND ORDER

This matter is before the Court on the parties' cross motions for Summary Judgment (ECF Nos. 28, 29). For the reasons set forth below, Plaintiff Patricia Bennett's Motion (ECF No. 29) is **DENIED** and Defendants' Motion is **GRANTED.**

### I.  BACKGROUND

#### A.  Factual Background

Plaintiff Patricia Bennett was previously employed as a journalist by Defendant APG Media of Ohio, LLC ("APG Media"), which owns and operates the Circleville Herald newspaper. (ECF No. 1 at ¶¶ 3, 11). Defendant Dustin Magill is the managing editor of the Circleville Herald, and Defendant Sarah Gillespie was employed as a staff writer for the newspaper at all relevant times. (*Id.* at ¶¶ 4, 5). Ms. Bennett left her employment at APG Media in December of 2014, and started the Pickaway News Journal ("PNJ") as a sole proprietor. (*Id.* at ¶¶ 11, 12). Ms. Bennett is the sole author and editor of all news content published on PNJ's website, pickawaynewsjournal.com. (*Id.* at ¶ 13).

On August 22, 2015, Ms. Bennett published an article on PNJ's website entitled "Spinners owners face organized crime charges for illegal casino operation" ("PNJ Spinners Article"). (ECF

No. 1-1). The PNJ Spinners Article details the indictment of owners and employees of Pickaway County Skilled Gaming, LLC d/b/a/ Spinners on various charges including engaging in a pattern of corrupt activity, money laundering, operation of an illegal casino, and possession of criminal tools. (*Id.*). Ms. Bennett registered the PNJ Spinners Article with the United States Copyright Office under registration number TX 8-151-866, with an effective date of August 25, 2015. (ECF No. 1-3).

On August 25, 2015, an article entitled "Four suspects tied to alleged illegal casino operation" was published on Circleville Herald's website ("CH Spinners Article") and the same article appeared in print on August 26, 2015. (ECF No. 1-2; ECF No. 28-2). The CH Spinners Article reports on the same indictments discussed in the PNJ Spinners Article. (ECF No. 1-2; ECF No. 28-2). The CH Spinners Article has a byline indicating that it was written by Ms. Gillespie. (ECF No. 1-2; ECF No. 28-2).

At 3:20 p.m. on August 28, 2015, Ms. Bennett published a second article on PNJ's website, entitled "Judge considers second competency evaluation for Teets" ("PNJ Teets Article") (ECF No. 1-4). The PNJ Teets Article reports that Judge Knece on the Pickaway County Common Pleas Court is considering a second psychiatric evaluation for Trevor Teets, who was charged with the murder of a nineteen-year-old and found competent to stand trial after his first competency evaluation. (*Id.*). Ms. Bennett registered the PNJ Teets Article with the United States Copyright Office under registration number TX 8-173-319, with an effective date of November 25, 2015. (ECF No. 1-6).

On the same day the PNJ Teets Article was published, an article entitled "Judge considering request of second psychiatric evaluation for Teets" was published on the Circleville Herald's website ("CH Teets Article"), reporting on the same facts discussed in the PNJ Teets Article. (ECF

No. 1-5). The CH Teets Article was published on the website at 7:03 p.m., but the first draft was saved on the Circleville Herald's computer system at 3:14 p.m., and a later draft was saved at 3:19 p.m. (ECF No. 1-5; ECF No. 28-8; ECF No. 28-9). The next day, the CH Teets Article was published in print. (ECF No. 1-5). As with the CH Spinners Article, the CH Teets Article includes a byline indicating it was written by Ms. Gillespie.

In July of 2016, Amanda Plotts, an APG Media employee, took a photograph at a ribbon cutting event for the Circleville Urgent Care center ("APG Urgent Care Photo"). (ECF No. 20-1). The APG Urgent Care Photo and a caption describing the event were published in the Circleville Herald on July 2, 2016. (*Id.*). APG Media filed a registration for the photograph with the United States Copyright Office under registration number VA002025013 which has an effective date of August 9, 2016. (ECF No. 20-3). Defendants contend that Ms. Bennett published the APG Urgent Care Photo on PNJ's website on July 22, 2016. (ECF No. 20-2).

### B. Procedural Background

Ms. Bennett initiated this lawsuit on April 20, 2016, bringing claims against APG Media, Mr. Magill, and Ms. Gillespie for copyright infringement of the PNJ Spinners Article and the PNJ Teets Article. (ECF No. 1). Defendants answered the Complaint on July 5, 2016. (ECF No. 9). Subsequently, Defendants filed a counterclaim against Ms. Bennett, alleging copyright infringement of the APG Urgent Care Photo. (ECF No. 20). On February 20, 2018, the parties filed cross-motions for summary judgment on Ms. Bennett's copyright claims. (ECF Nos. 28, 29). APG Media, Mr. Magill, and Ms. Gillespie responded to Ms. Bennett's Motion for Summary Judgment on March 13, 2018 (ECF No. 30), but Ms. Bennett failed to respond to Defendants' Motion. Ms. Bennett's time to do so has passed. *See* S.D. Ohio Civ. R. 7.2(a)(2). The Motions are thus ripe for decision.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). In a copyright infringement case, "a court may compare the two works and render judgment for the defendant on the ground that as a matter of

law a trier of fact would not be permitted to find substantial similarity." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

It is "well established that a pro se pleadings should be construed more liberally than pleadings drafted by lawyers," *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992), and thus this Court has a "duty to accord [Ms. Bennett] the benefit of a liberal construction of [her] pleadings and filings," *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) (internal quotations omitted). Pro se plaintiffs, however, "are not automatically entitled to take every case to trial and the lenient treatment generally accorded to pro se litigants has limits." *Farah*, 295 F. App'x at 748.

### III. ANALYSIS

As a threshold matter, Ms. Bennett did not respond to Defendants' Motion for Summary Judgment, and on this basis alone, the Court finds that granting Defendants' Motion is appropriate. *See Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (finding the district court "properly granted summary judgment because the Appellant failed to meet his Rule 56 burden" when appellant "did not properly respond to the arguments asserted" by appellees and therefore abandoned his claim); *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

In any event, considering the evidence in the record at this stage, the Court finds that Ms. Bennett has not met her burden of showing copyright infringement on the merits. In order to succeed on a claim of copyright infringement, a plaintiff must demonstrate two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (quoting *Feist*

5

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In terms of the first element, a certificate of registration from the Untied States Copyright Office "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C.A. § 410; *see also Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12-CV-1063, 2016 WL 1270665, at *3 (S.D. Ohio Mar. 31, 2016) (Marbley, J.) ("[a] certificate of copyright creates the presumption of the copyright's validity"). The presumption of validity can then be rebutted by the party challenging the copyright. *Pan*, 2016 WL 1270665, at *3. Here, APG Media, Mr. Magill, and Ms. Gillespie argue that Ms. Bennett failed to carry her burden to show valid ownership because she did not adequately respond to discovery regarding documents provided to the Copyright Office in order to procure the registrations. (ECF No. 28 at 9). Given that Ms. Bennett did provide prima facie evidence of validity by attaching the registrations to her Complaint, the fact that she is proceeding pro se, and the lack of a specific challenge to the validity of the copyrights themselves, this Court finds that Ms. Bennett has met her burden at this stage of showing ownership of a valid copyright.

The second element, however, requires Ms. Bennett to show that APG Media, Mr. Magill, and Ms. Gillespie copied constituent elements of the articles that are original. *Stromback*, 384 F.3d at 293. When there is no direct evidence of copying, a plaintiff "may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003). Access is essentially "having a reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy it." *Stromback*, 384 F. 3d at 293 (internal quotations omitted). Because Ms. Bennett presented evidence that the PNJ Spinners Article and the PNJ Teets Article were published and accessible online before the CH Spinners Article and CH Teets Article were published, and because Defendants do not make any arguments that Ms. Bennett's

articles were not accessible before the Circleville Herald's articles were published, the Court will assume that the first requirement is satisfied.[1]

Turning to the substantial similarity analysis, the Sixth Circuit has adopted a two-step approach to determine substantial similarity. The first step is to "filter out the unoriginal, unprotectible elements-elements that were not independently created by the inventor, and that possess no minimal degree of creativity." *Kohus*, 328 F.3d 848, 855 (6th Cir. 2003) (citing *Feist*, 499 U.S. at 345). Judge Learned Hand's famous abstractions test is a helpful tool in this regard:

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the play is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which, apart from their expression, his property is never extended.

*Id.* at 854 (quoting *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)). The "basic guidepost to keep is mind is that copyright only protects an author's original expression; thus courts must exclude as unprotectible any elements of the work that are not original" and "be careful to make the ever-difficult distinction between an author's ideas and his expression of those ideas." *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547, 553–54 (6th Cir. 2005) (internal citations omitted). Additionally, during this step it is "important to filter out *scenes a faire*: those elements that flow naturally from the work's theme, rather than from the author's creativity, or elements that are dictated by external factors such as particular business practices." *Kohus*, 328 F.3d at 856 (internal quotations omitted).

---

[1] Defendants do argue that the first draft of the CH Teets Article was created at 3:14 p.m., and a substantially complete draft was saved at 3:19 p.m., before the PNJ Teets Article was published at 3:20 p.m. The final CH Teets Article is somewhat different than the earlier versions, however, and it is at least possible that the changes could have been made as a result of seeing the PNJ Teets Article and copying material therefrom. The Court will therefore continue to the substantial similarity analysis.

7

After the unprotectable elements have been filtered out, "the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original." *Id.* at 856. This step involves comparing the two works and determining if the "accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking of material substance and value." *Stromback*, 384 F.3d at 297; *see also Winfield Colllection, Ltd.*, 147 F. App'x at 554 ("This analysis requires that the trier of fact determine substantial similarity from the perspective of the work's target audience. Normally, a copyright work's target audience is the lay public, or the ordinary reasonable person").

APG Media, Mr. Magill, and Ms. Gillespie argue under the first step that the facts must be filtered out, because facts cannot be copyrighted. (ECF No. 28 at 10-11). It is a well-known proposition of copyright law that facts are not copyrightable: "[t]hat there can be no copyright in facts is universally understood." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344–45, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991). Indeed, "[t]he most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates." *Id.* (quoting *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985)); *see also Int'l News Serv. v. Associated Press*, 248 U.S. 215, 234, 39 S. Ct. 68, 70–71, 63 L. Ed. 211 (1918) ("[T]he news element—the information respecting current events contained in the literary production—is not the creation of the writer, but it is a report of maters that ordinarily are publici juris; it is the history of the day). Factual compilations, on the other hand, may possess the requisite originality to be copyrighted—the author "typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by the readers" and such "choices as to selection and arrangement, so long as they are made independently

8

by the compiler and entail a minimal degree of creativity, as sufficiently original" to be protected through copyright laws." *Feist*, 499 U.S. at 348.

Defendants contend that the allegedly infringed articles consist almost entirely of recitation of facts, and as such, are not protected. (ECF No. 28 at 10-11). Because APG Media, Mr. Magill, and Ms. Gillespie "moved for summary judgment on the issue of substantial similarity . . . it became [Ms. Bennett's] burden to advance enough evidence for a reasonable juror to find in [her] favor." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (affirming lower court's decision granting summary judgment in defendants' favor when plaintiff did not "even attempt[] to specify exactly what portions of the [work are] protectable, original elements and which are unprotectable"). Ms. Bennett has not met her burden. She did not respond to Defendants' Motion for Summary Judgment, and did not follow the two-step approach outlined in *Kohus* in her own Motion for Summary Judgment. Nowhere in her Complaint or Motion for Summary Judgment does she mention with any specificity which portion of her works were infringed or which portions must be filtered out during the first step of the substantially similar analysis. Her claims, therefore, must fail. *See R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 275 (6th Cir. 2010) (holding that defendant was entitled to summary judgment on plaintiff's copyright infringement claims when plaintiff "had not attempted to identify any original elements of its software that [defendant] copied" and therefore "failed to produce evidence creating a question of fact as to whether [defendant] copied original elements of its software").

Additionally, Defendants argue that it is well-known in the industry that writing news articles is a formulaic procedure, and thus not unusual for articles on the same subject matter to be similar. (ECF No. 28 at 13). Ms. Bennett does not respond to this argument nor provide any evidence to the contrary. In the substantially similar analysis, any elements "dictated by external

factors such as particular business practices" must be filtered out. *Kohus*, 328 F.3d at 856 (internal quotations omitted). Without any response to Defendants' contention that the structure is dictated by the industry, Ms. Bennett has not met her burden of providing sufficient evidence from which a jury could find that the allegedly infringing work is substantially similar to the protectible elements of the original.

Ms. Bennett argues that the Circleville Herald's abbreviation of the name of months is evidence of copying, because the Circleville Herald does not traditionally abbreviate months like Ms. Bennett does. (ECF No. 29 at 2). But an abbreviated month is not a protectable element of her work, as it is not an original expression. Ms. Bennett also argues with respect to the Spinners article, that she gained one piece of information—that the fourth suspect's name was being withheld—directly from a conversation with the Pickaway County Prosecutor, and the fact that Defendants' included it in the CH Spinners Article is evidence of infringement because there is no way they would have gleaned the information otherwise. (ECF No. 29 at 2-3). As detailed above, however, there can be no copyright in facts, and even if Defendants took this information from her article, the fact that the fourth suspect's name was being withheld is not a protectable element of Ms. Bennett's work.

At base, Ms. Bennett has failed to meet her burden at the summary judgment stage. Even though the articles are similar, she did not respond to Defendants' Motion for Summary Judgment and simply has not carried her burden. Her Motion is therefore denied, and APG Media, Mr. Magill, and Ms. Gillespie are entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Ms. Bennett's Motion for Summary Judgment (ECF No. 29) and **GRANTS** APG Media, Mr. Magill, and Ms. Gillespie's Motion for Summary Judgment as to Ms. Bennett's copyright claims (ECF No. 28). Because neither party

moved for summary judgment on APG Media, Mr. Magill, and Ms. Gillespie's counterclaims, the counterclaims remain pending.

**IT IS SO ORDERED.**

                                                          <u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
**DATED: September 27, 2018**                **UNITED STATES DISTRICT JUDGE**